IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:07cr0003 |
| | ) | |
| | ) | JUDGE HAYNES |
| STEVEN DWAYNE JOHNSON | ) | |

## MEMORANDUM

The United States of America filed this criminal action against defendant Steven Dwayne Johnson, charging him with distribution and possession with intent to distribute methamphetamine and conspiracy to distribute methamphetamine.

Before the Court is Defendant's amended motion to suppress (Docket Entry No. 92), which seeks the suppression of all evidence obtained by a confidential informant ("CI") on September 25 and 26, 2006. Defendant contends that the CI's acts in circumventing a locked gate on Defendant's property on September 25, 2006 invaded Defendant's Fourth Amendment right to privacy. Specifically, Defendant asserts that "at no time prior to the confidential informant's arrival at [Defendant's] house did said confidential informant have express or implied permission to enter onto the Defendant's private property. . . Therefore, any evidence gained as a result of that entrance onto Defendant's property is inadmissible . . . and should be suppressed." (Docket Entry No. 92, at 2).

Defendant's first motion to suppress (Docket Entry No. 63) was substantially similar to this motion and the Government filed a response (Docket Entry No. 64). At the hearing on the first suppression motion, the Government submitted audio recordings of drug transactions

1

between the CI and the Defendant on September 25 and 26, 2006 and two investigative reports. By Order dated June 22, 2009, the Court denied Defendant's first motion to suppress without prejudice. (Docket Entry No. 86).

On November 17, 2010, defense counsel filed this amended motion. (Docket Entry No. 92). On November 19, 2010, the Court held a suppression hearing during which the parties presented argument and stated their reliance on the audio recordings as substantive proof. On December 8, 2010, the Government submitted a transcript highlighting the relevant portions of the September 25, 2006 transaction. (Docket Entry No. 94, Attachment 1). Based upon the record, the Court concludes that Defendant's amended motion to suppress should be denied.

## A. ANALYSIS OF THE EVIDENCE

Defendant's motion only challenges the CI's initial entry onto Defendant's property on September 25, 2006. As relevant here, the following information is contained in transcript excerpts from that date. (Docket Entry No. 94, Attachment 1).

On September 25, 2006, a CI met with a Tennessee Bureau of Investigation ("TBI") agent to attempt to purchase one ounce of Methamphetamine from the Defendant at his residence. Id. at 2. The CI was well-acquainted with Defendant, but had not communicated with Defendant on September 25, 2006. The CI was provided with prerecorded currency and an audio recording device. Id. The CI travelled to Defendant's residence alone. Id. at 31.

When the CI arrived at Defendant's residence, there was a locked gate across the driveway. Id. at 3. The CI reported: "Stop where ever you are right now don't go past me. I'm pulling in the driveway right now. He's got a pad lock on it but Johnny will let me in. I got to stop and walk up there, I'm getting out of the car to walk to the house." Id.

Approximately nine minutes later, the CI said "Johnny!" Id. The Defendant permitted the CI to enter the residence. The CI informed Defendant that she attempted to contact him numerous times and came directly from the bank. Id. at 4. The CI asked Defendant for "some help." Id. at 3. Defendant responded, "I got a little bit." Id. at 4. The Defendant asked what she wanted. Id. The CI responded that she wanted "an ounce" or "a quarter? Whatever you can get me to make me some money on." Id. at 4, 5. Defendant stated he had seen the CI's car and it was not familiar. Id. at 5.

While the CI was in the restroom, Defendant departed his residence. Id. at 10. Defendant's wife told the CI that Defendant had "gone to get" and "he says to tell you this $200 an 8 ball." Id. at 11. When the Defendant returned, the CI asked Defendant if he could "do it for 15 an ounce." Id. at 23. The Defendant responded that he needed "$200 a piece," that he had 6 now, but that he could "go get the rest of it" if the CI needed more. Id. at 23, 24. The CI counted out $1200 for "6 eight balls." Id. at 25. The CI stated that she was going to "go get rid of this I and I'm gonna gram it out, you know?" Id. at 28. Defendant responded, "I would." Id. The CI stated that she would "be back down here tonight or tomorrow shortly." Id. at 30. The CI stated: "I'll just call her [wife's] number . . . .[and] if you see my number I'll be on my way." Id. at 30. Defendant responded, "Alright." Id.

After the CI departed, she met the TBI agent for a debriefing and provided the narcotics purchased from the Defendant. Id. at 32-34. The CI also recorded a drug transaction with Defendant at his residence on September 26, 2006.

## B. CONCLUSIONS OF LAW

The Fourth Amendment protects individuals from unreasonable searches and seizures and evidence that stems from such unreasonable search or seizure must be suppressed. See Wong

3

Sun v. United States, 371 U.S. 471, 488 (1963). Here, there was no search of Defendant's residence. Defendant contends that all evidence obtained on September 25 and 26, 2006 should be suppressed based solely on the CI's circumvention of Defendant's locked gate on the driveway on September 25, 2006, citing United States v. Heath, 259 F.3d 522 (6th Cir. 2001).

In Heath, while defendant was detained, officers utilized a key found on defendant's person to enter a locked common area of an apartment complex and to locate his apartment. Id. at 526-27. Officers knocked on apartment door, another resident provided consent to search, and they recovered narcotics. Id. at 527. The Sixth Circuit held that the initial entry into the common area was unlawful.

> Assuming, arguendo, that these officers could somehow arrive at the outer gate to Horton's apartment building without violating Heath's Fourth Amendment rights, their entry into the building would still be barred. In United States v. Carriger, 541 F.2d 545, 552 (1976), we held that when "an officer enters a locked building, without authority or invitation, the evidence gained as a result of his presence in the common areas of the building must be suppressed."

Id. at 533.

Defendant contends that Heath applies because the CI lacked authority or invitation to enter the locked gate on Defendant's property. "While admitting that no search was initiated at the time of the unwarranted entry onto Defendant's property, Defendant would maintain that the spirit of the law would be the same, i.e., the confidential informant was on Defendant's premises to obtain evidence that could be used against him." (Docket Entry No. 92, at 3). Yet, unlike in Heath, here the CI circumvented the gate without opening it, Defendant permitted the CI to enter his residence, and there was not any search.

The Government contends that the CI's conduct did not infringe on Defendant's Fourth Amendment rights, citing Lewis v. United States, 385 U.S. 206 (1966). Defendant responds that Lewis is factually distinguishable because the Defendant did not invite the CI to his residence.

4

In Lewis, the defendant invited an "undercover agent to his home for the specific purpose of executing a felonious sale of narcotics." Id. at 210. In holding that there was not a Fourth Amendment violation, the Supreme Court stated:

> But when, as here, **the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.** Of course, this does not mean that, whenever entry is obtained by invitation and the locus is characterized as a place of business, an agent is authorized to conduct a general search for incriminating materials . . . [.]

Id. at 211 (emphasis added).

Similarly, in United States v. Ressler, 536 F.2d 208, 210 (7th Cir. 1976), the Seventh Circuit held that there was not a Fourth Amendment violation when a confidential informant and two undercover officers attempted to sell firearms at a residence. The officers entered after asking for defendant by his nickname and offered to trade firearms. Id. Agents later obtained a search warrant. Id. at 211. The Seventh Circuit held that the initial entry "did not violate the defendants' Fourth Amendment rights since the agents did not engage in any conduct not contemplated by the residents when they consented to their entry." Id. at 212.

> **Once the agents entered the house they brought up the subject of selling firearms. At that time the defendants became aware of the agents' purported purpose in being present. They then could have told the agents that they were not interested in dealing in firearms and asked them to leave, or they could have responded to the agents by engaging in the illegal activity. The defendants took the latter course by asking to see the agents' firearms and displaying their own weapons. Through these actions they acquiesced in the presence of the agents for the purpose of dealing in firearms and converted their home into a "commercial center" not protected by the Fourth Amendment.** Lewis v. United States, 385 U.S. at 211. As in Lewis, the agents did not violate the suspects' Fourth Amendment rights since they did not "see, hear, or take anything that was not contemplated, and in fact intended, by petitioner(s) as a necessary part of (their) illegal business." Lewis v. United States, Id. at 210.

5

Id. (emphasis added).

Likewise, in United States v. Janis, 831 F.2d 773, 775-76 (8th Cir. 1987), the Eighth Circuit held there was not a Fourth Amendment violation when a paid confidential informant attempted to purchase narcotics from a residence. The Eighth Circuit stated: "When Janis consented to having the informant in her home for the purpose of selling narcotics no Fourth Amendment rights were implicated." Id. at 775. The Eighth Circuit reasoned:

> In Davis,[1] a case very similar to the instant case, this court stated: "The crucial element in deciding issues like the one presented here is not whether the agents' identities were known, but rather whether the illegal activity that took place on the premises was known by the party extending the invitation to enter." United States v. Davis, 646 F.2d at 1301; see also United States v. Ruiz-Altschiller, 694 F.2d 1104, 1106-07 (8th Cir.1982), cert. denied sub nom., Perry v. United States, 462 U.S. 1134 (1983). The conclusion supported by the record is that Janis knew the purpose of the government informant's visit and agreed to his presence in her home for that purpose.

Id.

Here, it is undisputed that the Defendant did not invite the CI to his residence on September 25, 2006, that there was a locked gate across Defendant's driveway, and that the CI circumvented the gate to approach the house. It is also undisputed, however, that the Defendant permitted the CI to enter his residence. Once at the residence, the CI clearly informed the Defendant that she wanted to purchase narcotics. The CI stated she wanted "an ounce" or "a quarter" to "gram out." In response, the Defendant departed his residence to get drugs. The Defendant permitted the CI to remain at the residence during his absence. Once the Defendant returned, he sold the CI a quantity of narcotics for $1,200. The CI stated she would return for additional narcotics and the Defendant agreed. Thus, like in Lewis, Ressler, and Janis, here the Defendant knew the purpose of the CI's visit, to purchase narcotics, and allowed the CI to

---

[1] United States v. Davis, 646 F.2d 1298, 1301 (8th Cir. 1981).

6

remain present in his residence for that purpose. Defendant converted his residence into a "'commercial center' not protected by the Fourth Amendment." Ressler, 536 F.2d at 212 (quoting Lewis, 385 U.S. at 211). Thus, the Court concludes that Defendant's Fourth Amendment rights were not implicated because he consented to having the CI in his residence for the express purpose of conducting a drug transaction.

Accordingly, Defendant's amended motion to suppress (Docket Entry No. 92) should be denied.

An appropriate Order is filed herewith.

Entered on this the 25th day of January, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge